IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **PHENIX LONGHORN, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | Civil Action No. _____ |
| **TEXAS INSTRUMENTS, INC.** | § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Phenix Longhorn, LLC files this Original Complaint ("Complaint") against Defendant Texas Instruments, Inc. and in support thereof would respectfully show the Court the following:

### NATURE OF THE ACTION

This is an action for patent infringement of U.S. Patent No. 7,233,305 ("the '305 patent" or "the patent-in-suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief under 35 U.S.C. § 281 *et seq.*

### THE PARTIES

1. Plaintiff Phenix Longhorn, LLC ("Phenix") is a limited liability company organized and existing under the laws of the State of Texas. Phenix maintains a registered agent and office in the Eastern District of Texas (this "District") located at 2325 Oak Alley, Tyler, Texas 75702.

2. Upon information and belief, Defendant Texas Instruments, Inc. ("Texas Instruments") is a foreign for-profit corporation registered to do business in the State of Texas and organized and existing under the laws of the State of Delaware, having its principal place of business at 12500 TI Boulevard, Dallas, Texas 75243, and having several offices in this District, including a manufacturing location at 6412 US-75, Sherman, Texas 75090.

3. On information and belief, Texas Instruments regularly conducts and transacts business in the State of Texas, throughout the United States, and within this District, and as set forth below, has committed and continues to commit, tortious acts of infringement within and outside the State of Texas and within this District.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, U.S.C. §1, including 35 U.S.C. §§ 271 and 281-285.

5. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over the Texas Instruments by virtue of its systematic and continuous contacts with this jurisdiction which include being headquartered in the State of Texas, maintaining multiple manufacturing locations in the State of Texas and being registered to transact business in the State of Texas, as well as because the injury to Phenix occurred in the State of Texas and the claim for relief possessed by Phenix against Texas Instruments for that injury arose in the State of Texas, as alleged herein. Upon information and belief, Texas Instruments has committed and continues to commit acts of infringement in the United States, the State of Texas and this District by, among other things, making, using, importing, offering for sale, and/or selling products that infringe the '305 patent.

7. On information and belief, Texas Instruments has a registered agent for service of process located at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

8. This Court has personal jurisdiction over Texas Instruments because it purposely availed itself of the privileges of conducting business within the State of Texas, such business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly transacting or soliciting business, engaging in other persistent courses of conduct, or deriving or attempting to derive substantial revenue and financial benefits from goods and services provided to individuals residing in the State of Texas and in this District. Texas Instruments has also filed multiple lawsuits in this District. Thus, Texas Instruments is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due to at least its substantial business in this forum which is either conducted directly and/or through intermediaries.

9. Personal jurisdiction also exists specifically over Texas Instruments because Texas Instruments, directly or through subsidiaries or intermediaries (including customers, distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, sells, imports, advertises, or markets in the State of Texas and in this District, one or more products that infringe the patent-in-suit, as described particularly below. Texas Instruments has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the awareness and/or intent that these products will be purchased by consumers in this District. Texas Instruments has knowingly and purposefully shipped

infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased by consumers in this District.

10. On information and belief, Texas Instruments provides a continuous and unbroken supply chain placing infringing products in this District. Texas Instruments is a manufacturer for integrated circuits that are components of end products specifically manufactured for sale in the United States and, through those activities, has committed the tort of patent infringement using its nationwide contacts and distribution channels to import into, sell, offer for sale, and use these products in this District and elsewhere in the United States.

11. The exercise of jurisdiction over Texas Instruments would not offend traditional notions of fair play and substantial justice.

12. Phenix's claim for relief for patent infringement arises directly from the activities of Texas Instruments in this District.

13. Venue is proper as to Texas Instruments in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, on information and belief, Texas Instruments has directly and/or through its customers (a) infringed and continues to infringe the patent-in-suit by making, using, selling, offering for sale, and/or importing infringing products in this District and (b) transacted and continues to transact substantial commerce through at least three offices located in this District, where Texas Instruments has a regular and established place of business: the first office is a manufacturing plant located at 300 West Renner Road, Richardson, Texas 75080; the second office is a manufacturing plant located at 6412 U.S.-75, Sherman, Texas 75090; and the third office is located at 2501 TX-121 BUS, Lewisville, Texas 75067.

## THE ASSERTED PATENT

14.     On June 19, 2007, the '305 patent entitled "Gamma Reference Voltage Generator" was duly and legally issued with Richard Orlando and Trevor Blyth as the named inventors, after full and fair examination by the U.S. Patent and Trademark Office.  Phenix is the owner, by assignment, of all rights, title, and interest in and to the '305 patent, including the right to sue for and recover all past, present and future damages for infringement of the '305 patent.  A copy of the '305 patent is attached hereto as Exhibit A.

## BACKGROUND FACTS

15.     The subject matter of the '305 patent is an integrated circuit that improves the color fidelity of liquid crystal display ("LCD") screens, using a technology known as programmable gamma ("PGamma") correction.

16.     Mr. Orlando is a co-inventor of the '305 patent and President of Phenix.  Prior to Mr. Orlando forming Phenix, he was President of Alta Analog, Inc., ("Alta") a company incorporated in March 2002 to design and manufacture integrated circuits.  The Alta products were designed to improve the color fidelity of LCD screens for computer products using Pgamma technology.  Alta was the original owner of the '305 patent.

17.     On or about June 2012, a mutual colleague introduced Mr. Orlando to Dr. William Krenik via e-mail.  At the time, Dr. Krenik held the position of Chief Technology Officer of High Volume Linear Products for Texas Instruments.  On information and belief, Dr. Krenik has held the position of Chief Technology Officer at Texas Instruments for over thirty years.  At the time, Alta was having difficulties raising additional capital and Mr. Orlando was contacting other semiconductor companies to buy Alta.

18. Alta and Texas Instruments were competitors in the market for Pgamma integrated circuits, and Mr. Orlando, in his role as President of Alta, was seeking potential buyers for Alta's product lines, know-how and intellectual property assets, among other things. After the introduction, a series of e-mails and at least one conference call followed between Alta and Texas Instruments.

19. On or about June 29, 2012, Mr. Orlando had a scheduled telephone conference call with Dr. Krenik to discuss the Alta sales proposal. Prior to the conference call, Mr. Orlando provided Dr. Krenik with a detailed twenty-eight page Power Point technical presentation entitled "ALTA Analog Technology Overview." The Alta presentation described, among other things, the AGN1114 integrated circuit made by Alta. The AGN1114 was a Pgamma integrated circuit designed as a component intended for inclusion in products made by Apple, Inc. The Alta presentation and Alta's proprietary technology were discussed with Dr. Krenik during the June 29, 2012 conference call.

20. Furthermore, on or about July 17, 2012, Mr. Orlando provided Dr. Krenik via e-mail with a list of Alta's issued United States patents, including the '305 patent, which Mr. Orlando distinguished from the rest as "significant." The patent list included patent numbers and titles. Mr. Orlando believed that the '305 patent had significant value for companies who were delivering PGamma devices to the market.

21. After these discussions concluded, Dr. Krenik informed Mr. Orlando via e-mail that Texas Instruments was not interested in acquiring Alta.

22. On information and belief, Texas Instruments is one of the largest semiconductor manufacturers in the world that, among other things, makes and sells integrated circuits for use as components of end and intermediate products sold in the United States and abroad. As described

in further detail below, these end products include, for example, computers and televisions with LCD screens sold through brick and mortar retail stores and over the Internet. In addition, the intermediate products include, for example, timing controller printed circuit boards for driving the LCD screens in television sets.

23. On information and belief, Texas Instruments manufactures and sells the following five integrated circuits: BUF16821, BUF08832, BUF08630, BUF22821 and BUF08821 ("the Infringing Products"). The Infringing Products are Pgamma integrated circuits that improve the quality of a users' viewing experience while operating electronic products that have an LCD screen interface.

24. On information and belief, the Infringing Products were and/or are manufactured by Texas Instruments in this District at one or more wafer fabrication facilities in or around Richardson, Texas.

25. On information and belief, Texas Instruments has offered for sale and sold the BUF16821 as a component part of computers made by Apple, Inc. a company with headquarters located at 1 Infinite Loop, Cupertino, California 95014 ("Apple"). For example, three Apple computers with the BUF16821 are the Apple iMac Intel 27 inch Retina 5K Display, the Apple iMac Intel 21.5 inch EMC 2889, and the Apple iMac Pro. On information and belief, the forgoing Apple computer products were and/or are available for sale and service in this District at the Simply Mac store, located at 4919 S. Broadway Avenue, Tyler, Texas 75703 and at the Apple Store, 6121 West Park Boulevard, Plano, Texas 75093.

26. On information and belief, Texas Instruments has offered for sale and sold the BUF16821 as a component part of LCD television sets made by Royal Philips N.V., a company with headquarters located at Amstelplein 2, 1096 BC Amsterdam, The Netherlands ("Philips").

For example, two Philips television sets with the BUF16821 are model numbers 32PFL6704D/F7 and 47PFL5704DF7.  On information and belief, the forgoing Philips television products were available for sale and service at the Best Buy stores located in this District, including at 1751 North Central Expressway, Suite C, McKinney, Texas 75070 and 6121 West Park Boulevard, Suite B109, Plano, Texas 75093.

27.     On information and belief, Texas Instruments has offered for sale and sold the BUF08832 as a component part of television sets made by LG Electronics, Inc., a company with headquarters located at LG Twin Towers 20, Yoido-dong, Youngdungpo-gu, Seoul, 150-721, Korea ("LG").  For example, three LG television sets with the BUF08832 are model numbers 32LK430, 47LD452B-UA and 47LK451C.

28.     On information and belief, Texas Instruments has offered for sale and sold the BUF08630 as a component part of television sets made by Toshiba Corporation, a company with headquarters located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, 105-8001, Japan ("Toshiba"). For example, one Toshiba television set with the BUF08630 is model number 42HL834R.

29.     On information and belief, Texas Instruments has offered for sale and sold the BUF22821 as a component part of television sets made by Samsung Electronics Co., Ltd., a company with headquarters located at 129, Samsung-ro, Yeongtong-gu, Suwon, Gyeonggi-do, Korea ("Samsung").  For example, one Samsung television set with the BUF22821 is model number LE32A330J1N.

30.     On information and belief, the Infringing Products were available in the United States through one or more of Texas Instrument's authorized distributors.  On information and belief, these distributors are Arrow Electronics, Inc.; Avnet, Inc.; Digi-Key Corporation (d/b/a

8

Digi-Key Electronics); Mouser Electronics, Inc.; Newmark Corporation (d/b/a Newmark element 14); and Rochester Electronics, LLC.

31. On information and belief, Arrow Electronics, Inc. has an office in this District at 1820 Preston Park Blvd., Plano, Texas. On information and belief, Avnet, Inc. has an office in this District at 3101 E. President George Bush, Richardson, Texas. On information and belief, Mouser Electronics, Inc. has an office in the State of Texas at 1000 North Main Street, Mansfield, Texas.

32. On information and belief, Texas Instruments sells evaluation kits for the Infringing Products either directly from Texas Instruments to customers in the United States over the Internet at www.ti.com or through one or more of its authorized distributors. On information and belief, the part numbers for these kits are the BUF16821EVM-USB, BUF08832EVM, BUF08630EVM, BUF22821EVM-USB and BUF08821EVM-USB.

33. On information and belief, Texas Instruments had constructive knowledge or actual knowledge of the '305 patent before the filing of this Complaint, because products marked with the patent-in-suit were made, used, offered for sale, and sold in the United States, including but not limited to by Alta Analog, Inc. At least as of 2009, Alta Analog Inc. marked products with the patent number of the '305 patent, among other places, in the products' data sheets. Thus, Texas Instruments and the public are deemed to have notice of the '305 patent.

## COUNT 1
## DIRECT INFRINGEMENT OF U. S. PATENT NO. 7,233,305

34. Phenix restates and incorporates by reference its allegations in paragraphs 1 through 33 of this Complaint as if fully set forth herein and says, as more fully described below, that Texas Instruments has infringed the '305 patent and will continue to do so unless enjoined by this Court.

35. Texas Instruments has been and is now designing, marketing, testing, making or having made, using, selling, distributing, importing, and/or offering for sale in the United States the Infringing Products that infringe one or more claims of the '305 patent.

36. On information and belief, the Infringing Products infringe at least claim 1 of the '305 patent because each is comprised of at least one integrated circuit that contains at least the following salient features: a plurality of non-volatile storage cells; circuits for programming coupled to a multiplexer for addressing and programming said storage cells, wherein the addressing is based on a plurality of inputs; drivers connected to said storage cells and to the plurality of outputs; and the plurality of inputs connected to said multiplexer for addressing said storage cells; wherein said voltage signals are gamma reference voltage signals for determining actual driving voltages of columns of a display, wherein said non-volatile storage cells are organized into two or more banks of cells wherein each bank contains a predetermined gamma reference voltage signal display condition; and means to switch between the banks based on one or more external signals.

37. Texas Instruments has been and is now directly infringing the '305 patent by making or having made, designing, testing, using, selling, offering for sale, and/or importing into the United States the Infringing Products.

38. Texas Instruments, directly and/or through subsidiaries or intermediaries, has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '305 patent by making or having made, designing, testing, using, making available for another's use, selling or offering to sell, and/or importing the Infringing Products.

39. Texas Instruments has committed these acts of infringement without consent, license or authorization from Phenix.

40. By engaging in the conduct described herein, Texas Instruments has caused injury to Phenix, and Phenix has been damaged and continues to be damaged as result thereof, and Texas Instruments is thus liable to Phenix for infringement of the '305 patent, pursuant to 35 U.S.C. § 271(a).

41. As a direct and proximate result of Texas Instruments' infringement of the '305 patent, Phenix has suffered monetary losses for which Phenix is entitled to an award of damages that are adequate to compensate Phenix for Texas Instruments' past infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty on any infringing product made, used, sold, or offered for sale in the United States or elsewhere, together with interest and costs.

42. In addition, the infringing acts and practices of Texas Instruments has caused, is causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Phenix for which there is no adequate remedy at law, and for which Phenix is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Phenix is entitled to compensation for any continuing and/or future infringement up until the date that Texas Instruments is finally and permanently enjoined from further infringement.

## COUNT 2
## INDUCEMENT OF INFRINGEMENT OF U. S. PATENT NO. 7,233,305

43. Phenix restates and incorporates by reference its allegations in paragraphs 1 through 42 of this Complaint as if fully set forth herein and says that Texas Instruments, directly and/or through subsidiaries or intermediaries, has induced and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '305 patent. With knowledge of the '305 patent, Texas Instrument's deliberate and/or willfully blind actions include, but are not limited to, actively marketing to, supplying, causing the supply to, encouraging, recruiting, and instructing others such as consumers, businesses, distributors, agents, channel partners, resellers,

sales representatives, end users, and customers, to use, make available for another's use, promote, market, distribute, import, sell and/or offer to sell the Infringing Products. These actions, individually and collectively, have induced and continue to induce the direct infringement of the '305 patent by others such as consumers, businesses, distributors, resellers, sales representatives, agents, channel partners, end users, and customers. Texas Instruments knew and/or was willfully blind to the fact that the induced parties' use, testing, making available for another's use, promotion, marketing, distributing, importing, selling and/or offering to sell the Infringing Products would infringe one or more claims of the '305 patent.

44. On information and belief, Texas Instruments has been, among other things, purposefully, actively, and voluntarily making, selling, offering for sale, using, and/or distributing Infringing Products, with the expectation that they will be distributed and/or used by customers after insertion as components into customer products. On information and belief, Texas Instruments has competed for a share of the market for the Infringing Products that it knew was directed to the United States. On information and belief, Texas instruments provided technical marketing, including, but not limited to, documentation, software, evaluation boards and/or evaluation modules containing the Infringing Products, to customers and potential customers in the United States. On information and belief, Texas Instruments maintained a technical support center in the United States that provided support for the Infringing Products to customers in the United States.

45. As described above, as a consequence of Texas Instrument's past dealings with Alta that pre-dated the filing and service of this Complaint, Texas Instruments had knowledge of, or was willfully blind to knowledge of, the '305 patent and its infringement of the '305 patent before the filing of this lawsuit. Alternatively, at least by the time of filing and serving this Complaint,

Phenix has given Texas Instruments written notice of the infringement. Texas Instruments thus has committed acts of patent infringement within the State of Texas and in this District and/or has induced others to directly infringe the '305 patent. Texas Instrument's infringing activities violates 35 U.S.C. § 271(b).

## COUNT 3
## CONTRIBUTORY INFRINGEMENT OF U. S. PATENT NO. 7,233,305

46. Phenix restates and incorporates by reference its allegations in paragraphs 1 through 45 of this Complaint as if fully set forth herein and says that Texas Instruments, directly and/or through subsidiaries or intermediaries, has contributed to and continues to contribute to the infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '305 patent. With knowledge of the '305 patent, Texas Instrument's deliberate and/or willfully blind actions include, but are not limited to, supplying a component part of patented machine knowing the same to be especially made for use in an infringement of the '305 patent and not a staple or commodity of commerce suitable for substantial non-infringing use.

47. As described above, as a consequence of Texas Instrument's past dealings with Alta that pre-dated the filing and service of this Complaint, Texas Instruments had knowledge of, or was willfully blind to knowledge of, the '305 patent and its infringement of the '305 patent before the filing of this lawsuit. Alternatively, at least by the time of filing and serving this Complaint, Phenix has given Texas Instruments written notice of the infringement. Texas Instruments thus has committed acts of patent infringement within the State of Texas and in this District and/or has contributed to others directly infringing the '305 patent. Texas Instrument's infringing activities violates 35 U.S.C. § 271(c).

## COUNT 4
## DEFENDANT'S WILLFUL INFRINGEMENT

48. Phenix restates and incorporates by reference its allegations in paragraphs 1 through 47 of this Complaint as if fully set forth herein and says that Texas Instrument's infringement of the '305 patent is willful to the extent that Texas Instrument's past dealings with Alta that pre-dated the filing and service of this Complaint, as described above, gave Texas Instruments actual notice of the '305 patent prior to filing this lawsuit with subsequent willful misconduct through its deliberate or willfully blind actions or, alternatively, at least by the time of filing and service of this Complaint, Phenix has given Texas Instruments actual notice of the '305 patent and the infringement thereof.

49. Texas Instruments continues to make or have made, use, make available for another's use, sell or offer to sell, and/or import the Infringing Products, and/or continues to induce and/or contribute to the infringement of others, including consumers, businesses, distributors, agents, channel partners, resellers, sales representatives, end users, and customers.

50. On information and belief, the direct infringement, inducement of infringement and contributory infringement of the '305 patent by Texas Instruments, have been and continue to be willful.

## DEMAND FOR JURY TRIAL

51. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38(a), Phenix hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Phenix prays for the following relief:

a) A judgment and order that Texas Instruments has directly infringed (either literally or under the doctrine of equivalents), induced and/or contributed to the infringement of the '305 patent;

b) A judgment and order permanently enjoining Texas Instruments, its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns and any other person(s) in active concert or participation with Texas Instruments from directly infringing the '305 patent for the full term thereof;

c) A judgment that the infringement of the '305 patent by Texas Instruments has been willful;

d) A judgment and order requiring Texas Instruments to pay Phenix an award of damages under 35 U.S.C. § 284, adequate to compensate Phenix for Texas Instruments' past infringement, but in no event less than a reasonable royalty, including enhanced damages as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting, as needed, as well as damages for any continuing or future infringement up to and including the date that Texas Instruments is finally and permanently enjoined from further infringement;

e) A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Phenix be awarded a compulsory ongoing licensing fee;

f) A judgment and order that this action be found an exceptional case pursuant to 35 U.S.C. § 285, entitling Phenix to an award of all costs of this action, including attorneys' fees and interest;

g) A judgment and order requiring Texas Instruments to pay Phenix the costs of this action;

h) A judgment and order requiring Texas Instruments to pay Phenix pre-judgment and post-judgment interest on the damages award; and

i) Such other and further relief as the Court deems just and equitable.

Dated: January 22, 2018

Respectfully submitted,

*/s/ Andy Tindel w/ permission of Lead Attorney*

NICOLAS S. GIKKAS (Lead Attorney)
California State Bar No. 189452 (admitted E.D. Texas)
Email: nsg@gikkaslaw.com

LEWIS E. HUDNELL, III
California State Bar No. 218736 (admitted E.D. Texas)
Email: leh@gikkaslaw.com

THE GIKKAS LAW FIRM, P.C.
530 Lytton Avenue
2nd Floor
Palo Alto, California 94301
Telephone: (650) 617-3419
Facsimile: (650) 618-2600

ANDY TINDEL
Texas State Bar No. 20054500

MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
Email: atindel@andytindel.com

**ATTORNEYS FOR PLAINTIFF**